# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Cliffs Mining Company,

          Plaintiff,

v.

Wisconsin Electric Power Co. and
Wisconsin Gas LLC,

          Defendants.

Case No. 2:18-cv-00581-WED
Magistrate Judge William E. Duffin

**DEFENDANTS WISCONSIN ELECTRIC POWER COMPANY AND WISCONSIN GAS
LLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK
OF ARTICLE III STANDING AND FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 5

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION AND
DISMISSAL UNDER RULE 12(b)(1) IS REQUIRED BECAUSE
PLAINTIFF LACKS STANDING. ........................................................... 5

     A.    The Legal Standard for Rule 12(b)(1) Motions. ...................................... 5

     B.    Plaintiff Cannot Establish Standing to Bring This Lawsuit. .................... 6

          1.    Plaintiff Has Not Alleged a Concrete or Imminent Injury ......................... 7

          2.    Plaintiff Cannot Meet Its Burden to Show Causation or
Redressability. ...................................................................................... 9

II.    PLAINTIFF HAS NOT ALLEGED A VIABLE CLAIM FOR BREACH OF
CONTRACT. ............................................................................................ 10

     A.    The Legal Standard for Rule 12(b)(6) Motions. .................................... 10

     B.    Plaintiff Has Not Alleged Facts Sufficient to State a Claim for Breach of
Contract. ................................................................................................. 11

          1.    Plaintiff Fails Plausibly to Allege Any Conduct in Breach of the
JPDA. .................................................................................................... 11

          2.    Plaintiff's Interpretation of the JPDA is Contrary to Public Policy
and the 2007 ASAOC. ........................................................................... 13

III.   PLAINTIFF HAS NOT ALLEGED A VIABLE CLAIM FOR
DECLARATORY RELIEF. ..................................................................... 14

     A.    Plaintiff's Claim for Declaratory Relief Serves No Useful Purpose. ... 15

     B.    Plaintiff's Claim for Declaratory Relief Inappropriately Seeks to
Adjudicate Past Conduct. ....................................................................... 15

CONCLUSION ................................................................................................. 16

Case 2:18-cv-00581-WED   Filed 07/23/18   Page 2 of 23   Document 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amari v. Radio Spirits, Inc.*,
219 F. Supp. 2d 942 (N.D. Ill. 2002) .................................................................. 15

*AmeriPride Servs., Inc. v. Tex. E. Overseas Inc.*,
782 F.3d 474 (9th Cir. 2015) ................................................................................ 8

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009) ........................................................................... 5, 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................................... 5, 6, 9

*Ashcroft v. Iqbal*,
556 U.S. 662, 681 (2009) .................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 10

*Berger v. Nat'l Collegiate Athletic Ass'n*,
843 F.3d 285 (7th Cir. 2016) ................................................................................ 5

*Betco Corp., Ltd. v. Peacock*,
No. 14-CV-193-wmc, 2016 WL 7429460 (W.D. Wis. Dec. 23, 2016) ................. 12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................ 8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................................... 7, 8

*Doe v. Holcomb*,
883 F.3d 971 (7th Cir. 2018) .............................................................................. 10

*Elward v. Electrolux Home Prod., Inc.*,
214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................................. 15

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008) ................................................................................ 6

*U.S. ex rel. Head v. Kane Co.*,
668 F. Supp. 2d 146 (D.D.C. 2009) .................................................................... 13

*Henson v. CSC Credit Svcs.*,
29 F.3d 280, 284 (7th Cir.1994) ........................................................................... 2

*Huri v. Office of the Chief Judge of the Cir. Court of Cook Cty*,
804 F.3d 826 (7th Cir. 2015) .............................................................................. 10

*In re Golden Marina Causeway LLC*,
No. 1:16-bk-03587 (Bankr. N.D. Ill. Apr. 11, 2017) ............................................ 4

*In re Joint E. & S. Dist. Asbestos Litig.*,
    14 F.3d 726 (2d Cir. 1993) ................................................................................. 15

*Ippolito v. Meisel*,
    958 F. Supp. 155 (S.D.N.Y. 1997) ..................................................................... 16

*Kiely v. Raytheon Co.*,
    914 F. Supp. 708 (D. Mass. 1996) ..................................................................... 14

*Matthews v. Wis. Energy Corp.*,
    534 F.3d 547 (7th Cir. 2008) ............................................................................. 11

*McCulley v. U.S. Dep't of Veterans Affairs*,
    851 F. Supp. 1271 (E.D. Wis. 1994) ..................................................................... 6

*Menominee Indian Tribe of Wis. v. Thompson*,
    161 F.3d 449 (7th Cir. 1998) ............................................................................. 13

*Molex Inc. v. Wyler*,
    334 F. Supp. 2d 1083 (7th Cir. 2004) ................................................................ 14

*Molina Healthcare of Ind., Inc. v. Henderson*,
    No. 1:06-cv-1483-JDT-WTL, 2006 WL 3518269 (S.D. Ind. Dec. 4, 2006) ......... 15

*Pub. Serv. Co. of Colo. v. Gates Rubber Co.*,
    175 F.3d 1177 (10th Cir. 1999) ........................................................................... 8

*Quad Cities Waterkeeper Inc. v. Ballegeer*,
    No. 4:12-CV-4075- SLD-JEH, 2017 WL 2152366 (C.D. Ill. Mar. 28, 2017) ....... 15

*Rector v. City & Cty. of Denver*,
    348 F.3d 935 (10th Cir. 2003) ............................................................................. 7

*Rothman v. City of Chi.*,
    No. 02 C 3533, 2003 WL 21148180 (N.D. Ill. May 16, 2003) ...................... 14, 16

*Salem v. Kozlov*,
    No. 15 C 8997, 2016 WL 4169102 (N.D. Ill. Aug. 8, 2016) .............................. 11

*Sapperstein v. Hager*,
    188 F.3d 852 (7th Cir. 1999) ............................................................................... 2

*Scholz v. United States*,
    No. 16-CV-1052, 2017 WL 375651 (E.D. Wis. Jan. 25, 2017) ......................... 11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) .............................................................................................. 9

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ..................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................ 2

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) ......................................................................... 2, 13

iii

*United States v. Atl. Research Corp.*,
    551 U.S. 128 (2007).................................................................. 8

*United States v. E.I. Dupont De Nemours & Co. Inc.*,
    432 F.3d 161 (3d Cir. 2005) ...................................................... 8

*United States v. Hays*,
    515 U.S. 737 (1995)................................................................... 6

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) .................................................... 10

## STATUTES

28 U.S.C. § 2201.................................................................................. 14

42 U.S.C. § 9613(f).............................................................................. 7

## RULES

Fed. R. Civ. P. 12(b)(1)................................................................. 1, 7, 10

Fed. R. Civ. P. 12(b)(6)............................................................. 1, 2, 10, 13

iv

Defendants Wisconsin Electric Power Company and Wisconsin Gas LLC (collectively "We Energies") respectfully submit this Memorandum in support of their motion to dismiss Plaintiff's Complaint (Dkt. 1, the "Complaint") with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This is an extraordinary action by which a non-Wisconsin based company, Plaintiff Cliffs Mining Company ("Cliffs"), attempts to interfere with the proper and sound efforts of We Energies to work cooperatively with the United States Environmental Protection Agency ("EPA" or "Government") to investigate and develop a plan to remediate a former industrial site in Milwaukee currently owned by We Energies. Cliffs alleges that We Energies breached a joint participation and defense agreement with Cliffs when We Energies entered into a consent order with the Government to secure, investigate, and develop a plan to remediate that site. That assertion is baseless. As explained below, however, Cliffs lacks standing even to complain about We Energies' entry into a consent order with the Government. Moreover, the agreement upon which Cliffs' action is purportedly based does not remotely support its claims. As a result, Cliffs has not alleged a plausible claim for breach of contract under Wisconsin law or a valid claim for declaratory relief under the Declaratory Judgment Act.

Standing is lacking here because Cliffs was not harmed by the conduct it purports to challenge. The anticipatory "injury" Cliffs alleges—that its *potential* share of the as yet undetermined cost to remediate the former industrial site *may* increase as a result of We Energies' consent order with the Government—is entirely speculative and cannot constitute an injury-in-fact. Moreover, Cliffs cannot establish that any such speculative injury was either caused by We Energies or would be redressable through this lawsuit. Thus, Cliffs lacks any injury attributable to We Energies' alleged conduct and does not have standing to bring suit.

Regardless, even if Cliffs *did* have standing (and it does not), its breach of contract claim would still fail. Cliffs has not alleged any facts showing a breach of any provision of the agreement and, therefore, has not alleged a plausible breach of contract claim under Wisconsin law. Likewise, Cliffs' request for declaratory relief fails because it is entirely duplicative of its breach of contract claim and inappropriately seeks to adjudicate past conduct.

In sum, Cliffs' action fails as a matter of law. Cliffs does not have standing to bring suit, it has not plausibly alleged a breach of contract by We Energies, and it has no cognizable claim for declaratory relief. The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

This case involves environmental investigations and potential future environmental remediation at a former Milwaukee Solvay Coke & Gas site located at 311 East Greenfield Avenue, Milwaukee, Wisconsin (the "Site").[2]

---

[1] The facts set forth herein are taken from the Complaint, documents referred to within the Complaint and on which the Complaint is based, public filings in other federal proceedings, and the records or reports of federal agencies. As addressed below, this Court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction (*Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999)), and is free to examine "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in evaluating a motion to dismiss under Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (permitting judicial notice of "reports of administrative bodies"); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (permitting judicial notice of public records, including public court documents filed in other lawsuits, without converting a motion to dismiss pursuant to Rule 12(b)(6) to a motion for summary judgment).

[2] The Site investigation is divided into two areas: the ground portion of the site is referred to as the "Uplands" and the river portion is referred to as the "Sediments."

2

The 2007 Administrative Settlement and Order on Consent

On March 30, 2006, EPA issued a Special Notice Letter to Cliffs, We Energies, and three other companies[3] (the "PRP Group") regarding the Site and identifying the recipient companies as potentially responsible parties under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). (Compl., Dkt. 1, ¶ 8.) In response to EPA's letter, the PRP Group entered into a joint defense and participation agreement titled, "Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement – RI/FS" (the "JPDA").[4] (Compl., Dkt. 1, ¶ 1.) As indicated in the agreement's title, the JPDA was executed to allow the PRP Group to "pursu[e] their common interests regarding the performance of the Remedial Investigation/Feasibility Study ('RI/FS') for the Site," and provided terms regarding the execution of the RI/FS and the sharing of costs related to the RI/FS. (Ex. 1, JPDA, p. 1.) The scope of the JPDA was expressly limited to the RI/FS. (Ex. 1, JPDA § 1(b) ("The scope of work covered by this Agreement . . . does not include the performance of any response action or remedial action in addition to the RI/FS work…."))  The JPDA contains no provision that prohibits We Energies from entering into a consent order with EPA. Nor does the JPDA require that a vote be held for a Member party to exercise its individual right to settle with the Government.

Shortly after executing the JPDA, the PRP Group entered into an "Administrative Settlement and Order on Consent for Remedial Investigation/Feasibility Study" with EPA (the "2007 ASAOC," attached hereto as Exhibit 2). (Compl., Dkt. 1, ¶ 10.) As its name suggests, the 2007 ASAOC governed the development of the RI/FS for the Site. The 2007 ASAOC did not

[3] The additional recipients of the Special Notice Letter were American Natural Resources, East Greenfield Investors, LLC, and Maxus Energy Corporation. (Compl., Dkt. 1, ¶ 8.)
[4] Cliffs did not include a copy of the JPDA with its Complaint because of its view that this agreement is "subject to terms of confidentiality." (Compl., Dkt. 1, ¶ 1.) We Energies submits the JPDA as Exhibit 1 hereto, and has separately moved to file the JPDA under seal.

address potential remediation investigations or actions outside of the RI/FS, though EPA reserved its rights to require the PRP Group to undertake additional activities pursuant to CERCLA or any other applicable law in the future.  (Ex. 2, 2007 ASAOC ¶ 79.)

The PRP Group completed and submitted its Remedial Investigation to EPA in September of 2016.  (Compl., Dkt. 1, ¶ 11; Ex. 3, Administrative Settlement and Order on Consent for Site Fencing/Security, Engineering Evaluation/Cost Analysis and Non-Critical Removal Action at the Uplands, ¶ 13.)  The Feasibility Study has not been completed.  (Compl., Dkt. 1, ¶ 11.)  Preliminary draft portions of a Feasibility Study, including a Comparative Analysis of Alternatives Memorandum ("CAAM"), which included proposed remedial measures, was submitted to EPA in September 2017.  (Ex. 4, Letter from V. Patel, EPA, to J. Kratzmeyer, Arcadis, dated March 29, 2018 (hereinafter, "Patel Letter").)  By way of a March 29, 2018 letter, EPA informed the PRP Group that it identified "significant deficiencies" in the CAAM. (*Id.*, p. 1.)  However, to date, EPA has not provided its official comments on the CAAM to the PRP Group.  (*Id.*)

<u>We Energies' Administrative Settlement and Order on Consent with EPA</u>

In 2016, while the RI/FS was still in development, the then-owner of the Site, Golden Marina Causeway LLC, filed for bankruptcy.  (Compl., Dkt. 1, ¶¶ 11-12; *see also* Petition for Bankruptcy, *In re Golden Marina Causeway LLC*, Case No. 1:16-bk-03587 (Bankr. N.D. Ill. Feb. 5, 2016) (Dkt. 1).)  In the spring of 2017, We Energies purchased the Site from the owner. (Compl., Dkt. 1, ¶ 12; *see also* Order Authorizing Sale, *In re Golden Marina Causeway LLC*, Case No. 1:16-bk-03587 (Bankr. N.D. Ill. Apr. 11, 2017) (Dkt. 128).)  In August 2017, We Energies, as the Site's new owner, entered into a separate Administrative Settlement and Order on Consent with EPA, agreeing to secure the site and develop an Engineering Evaluation/Cost Analysis ("EE/CA") and Non-Critical Removal Action for the Uplands portion of the Site (the "Uplands ASAOC").

4

(Ex. 3, Uplands ASAOC.)  The Uplands ASAOC creates obligations that bind We Energies and EPA, but it in no way obligates any other member of the PRP Group.  (*Id.* ¶ 5 (Parties Bound).)

On March 29, 2018, EPA informed the PRP Group that it was holding the work under the 2007 ASAOC in abeyance.  (Ex. 4, Patel Letter.)  The Uplands portion of the work is held in abeyance until We Energies performs its work under the Uplands ASAOC.  (*Id.*, p. 1.)  The Sediments portion of the work is held in abeyance while the PRP Group identifies a path forward through an agreement with the State.  (*Id.*, pp. 1-2)

On April 12, 2018, Cliffs filed the instant action against We Energies.  As of the date of this filing, work under both the 2007 ASAOC and the Uplands ASAOC is incomplete, and no final remedial actions have been approved by EPA for implementation.  (*Id.*)

## ARGUMENT

## I. THIS COURT LACKS SUBJECT MATTER JURISDICTION AND DISMISSAL UNDER RULE 12(b)(1) IS REQUIRED BECAUSE PLAINTIFF LACKS STANDING.

### A. The Legal Standard for Rule 12(b)(1) Motions.

Article III of the Constitution limits federal jurisdiction to cases or controversies.  U.S. CONST. Art. III, § 2, cl. 1.  Plaintiff has the burden to establish standing as an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) ("As a jurisdictional requirement, the plaintiff bears the burden of establishing standing."). If the plaintiff cannot "plausibly" show it has standing, the court must dismiss the complaint under Rule 12(b)(1).  *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016).

When considering a Rule 12(b)(1) motion to dismiss, courts are not bound to accept the jurisdictional allegations in the complaint as true; rather, "the Court should look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the

issue in determining whether in fact subject matter jurisdiction exists." *McCulley v. U.S. Dep't of Veterans Affairs*, 851 F. Supp. 1271, 1276 (E.D. Wis. 1994); *see also Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008). Because of the "importance of limiting federal jurisdiction . . . if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Apex Digital Inc.*, 572 F.3d at 444 (internal quotations omitted).

This Court is the factfinder for any factual disputes arising from the parties' submissions on the issue of standing. No presumption in favor of the plaintiff applies. *Id.* (when a defendant "produce[s] evidence calling [plaintiff]'s standing into question . . . . the presumption of correctness that we accord to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists.") (internal quotations omitted).

**B. Plaintiff Cannot Establish Standing to Bring This Lawsuit.**

To satisfy the "irreducible constitutional minimum of standing," Plaintiff must make a three-pronged showing of: (1) an "injury-in-fact" that is concrete and particularized, actual and imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the complained-of conduct; and (3) redressability in the sense that it must be likely, not simply speculative, the injury will be redressed by a favorable decision. *United States v. Hays*, 515 U.S. 737, 742-43 (1995); *Lujan*, 504 U.S. at 560-61. Cliffs' pleading utterly fails to meet its burden on all three elements: it fails to allege a concrete or imminent injury-in-fact and likewise cannot show either causation or redressability.

Cliffs alleges that it "will be damaged to the extent that Cliffs' share of the costs of the remedy for the Site resulting from the EE/CA exceed that [which] would have resulted from its share of the remedy for the Site resulting from the RI/FS." (Compl., Dkt. 1, ¶ 30.) Cliffs' allegations of possible future injury assuredly do not satisfy the case or controversy requirements

of Article III.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute an injury in fact, and that allegations of *possible* future injury are not sufficient.") (emphasis in original, internal quotations omitted).  Because Cliffs lacks standing to bring suit, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1).

### 1.  Plaintiff Has Not Alleged a Concrete or Imminent Injury

Cliffs' claimed injury is entirely hypothetical for three separate but related reasons.  First, Cliffs' alleged damages rely upon an intervening event that has not occurred and may never occur—the possibility that some day We Energies will file suit against Cliffs for contribution under CERCLA.  (Compl., Dkt. 1, ¶ 30 (alleging We Energies "*can* sue Cliffs in contribution under CERCLA") (emphasis supplied).)  While We Energies certainly has a right to bring a future action under CERCLA (42 U.S.C. § 9613(f)), Cliffs cannot claim an injury from that possible action unless and until We Energies actually exercises that right.  That a future action *may* be forthcoming and *may* lead to injury is the essence of conjecture and speculation.  *Clapper*, 568 U.S. at 409; *Rector v. City & Cty. of Denver,* 348 F.3d 935, 946 (10th Cir. 2003) ("The abstract possibility that Plaintiffs may receive a contestable parking ticket in the future certainly does not satisfy Article III's requirements."); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876 (N.D. Ill. 2014) ("the mere fact that [a] risk [of injury] has been increased does not suffice to establish standing.").  Cliffs cannot claim an injury exists simply because it might someday be sued for contribution.

Second, Cliffs' purported injury is based upon its unfounded assumption that We Energies' alleged breach will result in a remedial plan that is "imprudent" and not "cost effective" and that Cliffs will therefore be forced to overpay for unnecessary work in a future CERLCA contribution action.  (Compl., Dkt. 1, ¶ 30.)  Under an action for contribution or cost recovery under CERCLA,

however, a defendant is only liable for costs that are necessary and consistent with the National Contingency Plan ("NCP"). *Pub. Serv. Co. of Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1181 (10th Cir. 1999). If We Energies ultimately brings a contribution action, Cliffs would be able to contest any costs beyond those that were "necessary" and "consistent" with the NCP. *AmeriPride Servs., Inc. v. Tex. E. Overseas Inc.*, 782 F.3d 474, 490 (9th Cir. 2015) (citing *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007)) ("[Parties] can seek contribution under § 9613(f)(1) only for the settlement costs that were for necessary response costs incurred consistent with the NCP."); *United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161, 178 (3d Cir. 2005) ("[C]osts will only be recoverable if they result from compliance with the [NCP's] methods and criteria for determining appropriate, cost-effective response actions."). Cliffs' fear that it will be damaged by overpayment is thus pure conjecture and insufficient to satisfy the court's standing requirements. *Clapper*, 568 U.S. at 409 (holding that there was no Article III standing where chain of speculative possibilities did not establish that injury based on potential future action was "certainly impending"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (requiring "immediate threat of future injury by the defendant" for standing and finding plaintiff's "subjective apprehensions" insufficient).

Third, Cliffs alleges that its injury amounts to the difference between the cost of the remedy that would have resulted from the 2007 ASAOC and the cost that will result from the Uplands ASAOC. But whether there will be any difference between the remedies, (and whether that difference would be detrimental to Cliffs) is unknowable at this time. As acknowledged by Cliffs in its Complaint, the Feasibility Study under the 2007 ASAOC has not yet been completed. (Compl., Dkt. 1, ¶ 11.) EPA has not selected or approved a remedy under either the 2007 ASAOC or the Uplands ASAOC. Indeed, though a draft CAAM was submitted to EPA under the 2007

ASAOC containing proposed remedies, EPA deemed that proposal "significant[ly] deficien[t]." (*See* Ex. 4, Patel Letter, p. 1.) Any attempt at calculating the cost of a yet-to-be-determined final remedy—much less the difference in the cost to Cliffs between that remedy and some hypothetical alternative remedy—would be entirely speculative.[5]

Cliffs has failed to allege an injury-in-fact that is concrete or imminent and, therefore, has no standing to bring this action.

## 2. Plaintiff Cannot Meet Its Burden to Show Causation or Redressability.

Cliffs likewise fails to meet its burden for the remaining standing requirements: causation and redressability. To show causation, Cliffs' injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976). Even if Cliffs could show that it will be injured by an increase in its share of costs, or that Cliff's money was "wasted" by abiding by the 2007 ASAOC, Cliffs cannot show that We Energies caused this injury as opposed to EPA.

Similarly, to show redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations

---

[5] Cliffs' claims of future injury are also insupportable given the indemnification protection Cliffs has in place. Cliffs is indemnified by East Greenfield Investors, LLC ("EGI"), to the extent of millions of dollars of assets held in escrow from and against liabilities or costs relating to the investigation or remediation of the Site. (Order Granting Settlement with Cliffs Mining in *In re Golden Marina Causeway, LLC*, N.D. Ill. Bankr. No. 16-03587 (ECF 240), Exhibit 1 – EGI/Cliffs Settlement, ¶¶ 2.1 and 2.2.) The EGI/Cliffs Settlement Agreement provides that, upon termination of the Escrow Agreement, all amounts remaining in escrow are to be disbursed back to EGI (not Cliffs). (*Id.* ¶ 3.3.3.) Consequently, even assuming that Cliffs' theoretical share of the costs of the remedy resulting from the Uplands ASAOC ultimately exceeds that which would have resulted from its share of the remedy resulting from the 2007 ASAOC, Cliffs would not suffer any injury unless that increased share exceeds the amount of the funds available in escrow to pay those costs. This adds yet another layer of conjecture to the already speculative nature of Cliffs' claimed injury.

omitted); *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) ("[Plaintiff] must show that it is likely a favorable decision against the named defendant would redress the plaintiff's injury."). A decision in favor of Cliffs here would do nothing to impact the fact that EPA found the CAAM proposals under the 2007 ASAOC significantly deficient, nor would it impact the selection or cost of the remedy ultimately chosen by EPA or Cliffs' share allocation in a future (currently non-existent) CERCLA action.

Ultimately, Cliffs is unable to show injury-in-fact, causation, or redressability. Because Cliffs lacks Article III standing to bring suit, this matter must be dismissed under Rule 12(b)(1).

## II. PLAINTIFF HAS NOT ALLEGED A VIABLE CLAIM FOR BREACH OF CONTRACT.

### A. The Legal Standard for Rule 12(b)(6) Motions.

When considering a Rule 12(b)(6) motion to dismiss, a court must accept "factual matter" in the complaint as true but need not accept as true "bald allegations" or "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same). A complaint must be dismissed if its well-pleaded factual allegations do not establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Huri v. Office of the Chief Judge of the Cir. Court of Cook Cty.*, 804 F.3d 826, 832-33 (7th Cir. 2015). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In deciding a 12(b)(6) motion, the Court may consider well-pleaded factual allegations, "documents that are attached to the complaint, documents that are central to the complaint and are referred in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing Black's Law Dictionary 869 (9th ed. 2009)); *see, e.g.,*

*Scholz v. United States*, No. 16-CV-1052, 2017 WL 375651, at *2 (E.D. Wis. Jan. 25, 2017) (taking judicial notice of documents attached to plaintiff's complaint and documents attached to plaintiff's brief opposing the motion to dismiss that are "central to the complaint and referred to in it or in documents appended to it"). Though a motion to dismiss accepts all well-pleaded facts, a court is not bound by allegations that are clearly unsupported and unsupportable and will not accept as true allegations revealed to be unfounded by documents included in pleadings or introduced in support of the motion. *Salem v. Kozlov*, No. 15 C 8997, 2016 WL 4169102, at *6 (N.D. Ill. Aug. 8, 2016).

**B.     Plaintiff Has Not Alleged Facts Sufficient to State a Claim for Breach of Contract.**

Under Wisconsin law, a plaintiff must demonstrate three elements in order to prove a breach of contract claim: (1) that a valid contract existed, (2) that the defendant breached that contract, and (3) that damages flowed from the breach. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008). Even taking Cliffs' well-pleaded factual allegations as true and drawing all reasonable inferences in its favor, Cliffs has failed to plausibly allege any facts showing that We Energies breached any terms of the JPDA or that Cliffs has suffered any damages as a result.

**1.     Plaintiff Fails Plausibly to Allege Any Conduct in Breach of the JPDA.**

The JPDA contains no provision that prohibits We Energies from entering into an ASAOC with EPA. The PRP Group entered into the JPDA to organize and conduct negotiations with EPA regarding the performance of work under the 2007 ASAOC, to conduct a RI/FS, and to share in the costs of undertaking that work. (Ex. 1, JPDA §§ 1(a)(2), 1(b).) The JPDA's scope is expressly limited such that it does not govern the performance of any work outside of the RI/FS. (*Id.* § 1(b).) Further, the JPDA contains no provision that prohibits We Energies from negotiating or entering into a separate ASAOC with EPA on We Energies' own behalf. Indeed, communication between

EPA and individual Member parties regarding matters other than the RI/FS or the 2007 ASAOC is expressly permitted.  (*Id.* § 3(c)(10).)

Nevertheless, Cliffs alleges that We Energies breached the JPDA by failing to call for a "vote or special vote" of the PRP Group prior to entering into the Uplands ASAOC with EPA. (Compl., Dkt. 1, ¶ 28.)  The JPDA, however, does not require that a vote be held for a Member party to exercise its individual right to settle with the Government.  Contrary to Cliffs' allegations, Section 3(c) of the JPDA requires a special vote to authorize a "[d]ecision *by the group* . . . to otherwise create obligations not related to the performance of the RI/FS that could impose financial or significant other responsibilities upon the Group."  (Ex. 1, JPDA § 3(c)(12) (emphasis added).) The Uplands ASAOC between We Energies and EPA was not a decision by the PRP Group, and it does not impose responsibilities on any parties other than We Energies and EPA.  (*See* Ex. 4, Uplands ASAOC ¶ 5 (Parties Bound).)  Accordingly, We Energies was not required to call for a vote prior to entering into a consent order with the Government on its own behalf. Nor was We Energies required to call for a vote prior to purchasing the Site. Cliffs, therefore, has not alleged an action by We Energies in breach of the JPDA.

Cliffs further alleges that We Energies breached the JPDA because the Uplands ASAOC between We Energies and EPA "foreclose[s] the ability of the parties to undertake and complete the RI/FS [and] fulfill the requirements of the RI/FS ASAOC."  (Compl., Dkt. 1, ¶ 29.)  This asserted breach also is not supported by the JPDA for several reasons.  First, the JPDA does not *require* the completion of an RI/FS, it merely requires that the PRP Group share the costs of the development of an RI/FS "if [an RI/FS] is undertaken by the Group."  (Ex. 1, JPDA § 16.)  Cliffs cannot rewrite the contract to include provisions that do not exist.  *See Betco Corp., Ltd. v.*

*Peacock*, No. 14-CV-193-wmc, 2016 WL 7429460, at *6 (W.D. Wis. Dec. 23, 2016) ("[T]he implied duty of good faith is 'not a license to rewrite a contract.'").

Moreover, the Uplands ASAOC does not prevent the PRP Group from completing its obligations under the 2007 ASAOC. Indeed, work on the RI/FS continued after the Uplands ASAOC was executed. On March 29, 2018, EPA issued a letter holding work under the 2007 ASAOC in abeyance while the PRP Group identifies a path forward for addressing contaminated sediments through an Agreement with the State. (*See* Ex. 4, Patel Letter.)[6] RI/FS work under the 2007 ASAOC may continue regardless of the Uplands ASAOC.

Cliffs fails plausibly to allege any action by We Energies in breach of the JPDA and, therefore, its breach of contract claim should be dismissed under Rule 12(b)(6).

**2.     Plaintiff's Interpretation of the JPDA is Contrary to Public Policy and the 2007 ASAOC.**

In its Complaint, Cliffs attempts to argue that the JPDA prevents the signatories from complying with EPA requirements to perform additional activities outside of the 2007 ASAOC pursuant to CERCLA. In effect, Cliffs seeks an interpretation of the JPDA that would prevent We Energies from working cooperatively with the EPA to secure, investigate, and develop a plan to remediate the Milwaukee Site. Such an interpretation is at odds with the plain language of the JPDA. Moreover, so interpreting the JPDA would fundamentally impinge upon and unduly interfere with the Government's public policy objective to protect the public health, welfare and the environment. "[A] private agreement is unenforceable on grounds of public policy if its enforcement is clearly outweighed by a public policy against such terms." *U.S. ex rel. Head v.*

---

[6] The Court may properly take judicial notice of documents such as EPA's March 29, 2018 letter when deciding upon a Rule 12(b)(6) without converting the motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (permitting judicial notice of "reports of administrative bodies").

13

*Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009); *see also Kiely v. Raytheon Co.*, 914 F. Supp. 708, 713 (D. Mass. 1996) (refusing to construe joint defense agreement to prohibit cooperation with law enforcement). Indeed, in the 2007 ASAOC, to which Cliffs is a signatory, EPA explicitly reserves the right to require Respondents to perform additional activities relating to the Site in the future. (Ex. 2, 2007 ASAOC ¶ 79.) EPA, in entering into the Uplands ASAOC with We Energies, has exercised this right by requiring that We Energies perform additional activities at the Site. Thus, construing the JPDA to punish We Energies for entering into the Uplands ASAOC with EPA would be contrary to public policy and infringe on EPA's rights under the 2007 ASAOC.

## III. PLAINTIFF HAS NOT ALLEGED A VIABLE CLAIM FOR DECLARATORY RELIEF.

The availability of declaratory relief is a matter of federal law governed by the Declaratory Judgment Act. *See* 28 U.S.C. § 2201, *et seq.* (2010). That Act gives federal courts the *discretion*, not the obligation, to declare parties' rights. *Id.* (a court "*may* declare the rights and other legal relations of any interested party" (emphasis supplied)); *see also Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1088 (7th Cir. 2004)) ("[T]here is no right to declaratory relief; a request for such relief is addressed to the discretion of the district court."). Declaratory relief should be denied unless "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Molex Inc.*, 334 F. Supp. 2d at 1087 (citations and quotations omitted). In addition, the purpose of a declaratory judgment is not to adjudicate past conduct, but to declare rights so that parties can conform their future conduct to avoid future litigation or the "accrual of avoidable damages." *Rothman v. City of Chi.*, No. 02 C 3533, 2003 WL 21148180, at *5 (N.D. Ill. May 16, 2003). Cliffs' purported claim for declaratory relief runs afoul of both of these principles, and it should therefore be dismissed.

14

**A. Plaintiff's Claim for Declaratory Relief Serves No Useful Purpose.**

Declaratory relief serves no useful purpose where, as here, a party simultaneously has sued for breach of contract and resulting damages that, if awarded, will fully compensate for any loss caused by the breach. *See Quad Cities Waterkeeper Inc. v. Ballegeer*, Case No. 4:12-CV-4075-SLD-JEH, 2017 WL 2152366, at *5 (C.D. Ill. Mar. 28, 2017) ("Courts frequently deny requests for declaratory judgment in claims or counterclaims that simply duplicate or directly contradict a party's requested relief."); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose."). Cliffs requests this Court to declare that We Energies "breached the Agreement" and that Cliffs "has been damaged" as a result of that breach. (Compl., Dkt. 1, ¶¶ 23-24.) That request exactly duplicates its breach of contract claim. (*Id.* at ¶¶ 28-31.)

The Declaratory Judgment Act does not create an independent cause of action for declaratory relief. *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016). If Cliffs' breach of contract claim were to succeed, there would be nothing for the Court to "declare," and no further relief for the Court to grant. Conversely, if Cliffs' claim for breach fails (now or later), its declaratory judgment claim also must fail. *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *see also Molina Healthcare of Ind., Inc. v. Henderson*, Civ. No. 1:06-cv-1483-JDT-WTL, 2006 WL 3518269, at *21 (S.D. Ind. Dec. 4, 2006). Cliffs' request for declaratory relief is thus superfluous and should be dismissed.

**B. Plaintiff's Claim for Declaratory Relief Inappropriately Seeks to Adjudicate Past Conduct.**

The purpose of a declaratory judgment is to declare rights so that parties can conform their future conduct to avoid future litigation or the accrual of avoidable damages. *Rothman*, 2003 WL

15

21148180, at *5. But that is not what Cliffs' claim for declaratory relief seeks. As noted above, Cliffs expressly asks this Court to declare that We Energies "*breached* the Agreement" and that Cliffs "*has been* damaged" as a result of that breach. (Compl., Dkt. 1, ¶¶ 23-24 (emphases added).) Courts are not "obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." *Ippolito v. Meisel*, 958 F. Supp. 155, 165 (S.D.N.Y. 1997). That Cliffs also seeks a declaration that it "will be further damaged by the breach to the extent that [its share of the costs of the remedy increases]" (Compl., Dkt. 1, ¶ 25) does not change this analysis because such a declaration will not operate prospectively and will not impact the parties' future conduct. To the extent Cliffs intends for the declaratory relief it seeks to impact the parties' future conduct—presumably by preventing We Energies from completing the work required under the Uplands ASAOC—it would be a disguised request for injunctive relief, and contrary to public policy. The Court accordingly should dismiss Cliffs' request for declaratory relief for inappropriately seeking adjudication of We Energies' past conduct.

## CONCLUSION

For the foregoing reasons, Defendants Wisconsin Electric Power Company and Wisconsin Gas LLC respectfully request that the Court grant their Motion and dismiss Plaintiff's entire Complaint with prejudice.

Dated: July 23, 2018                    Respectfully submitted,

                                        /s/ Joseph A. Cancila
                                        Joseph A. Cancila
                                        Sondra Hemeryck
                                        Deborah Bone
                                        RILEY SAFER HOLMES & CANCILA LLP
                                        70 W Madison Street
                                        Suite 2900
                                        Chicago, IL 60602
                                        (312) 471-8700
                                        (312) 471-8701 (fax)

16

jcancila@rshc-law.com
shemeryck@rshc-law.com
dbone@rshc-law.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2018, I electronically transmitted the foregoing to the

Clerk's Office using the CM/ECF System, which will send notice of the filing to counsel for all

parties having appeared of record.

/s/ Joseph A. Cancila
Joseph A. Cancila
RILEY SAFER HOLMES & CANCILA LLP
70 W Madison Street
Suite 2900
Chicago, IL 60602
(312) 471-8750
jcancila@rshc-law.com