UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **CLIFFS MINING COMPANY** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:18-cv-00581-WED |
| ) | |
| v. ) | Magistrate Judge Duffin |
| ) | |
| **WISCONSIN ELECTRIC POWER** ) | |
| **COMPANY and WISCONSIN GAS** ) | |
| **LLC,** ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF ARTICLE III STANDING
AND FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

    I.     Neither Execution of the JPDA or Suing for Breach of Contract Violates Public Policy ................................................................................................... 2

    II.    Article III Standing Exists ..................................................................................... 2

    III.   Cliffs has Adequately Pled a Claim for Breach of Contract Upon Which Relief may be Founded. ........................................................................................ 6

    IV.   Cliffs Has Properly Alleged a Claim for Declaratory Judgment ......................... 11

    V.    Conclusion ........................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Carr*,
　369 U.S. 186 (1962) .............................................................................................................. 2

*Betco Corp., Ltd. v. Peacock*,
　No. 14-CV-193-WMC, 2016 WL 7429460 (W.D. Wis. Dec. 23, 2016) .............................. 8, 9

*Carlsen v. GameStop, Inc.*,
　833 F.3d 903 (8th Cir. 2016) ................................................................................................. 3

*Clapper v. Amnesty Int'l, USA*,
　568 U.S. 398 (2013) ........................................................................................................... 4, 5

*Kuhns v. Scottrade, Inc.*
　868 F.3d 711 (8th Cir. 2017) ................................................................................................. 4

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992) .............................................................................................................. 3

*Matthews v. Wis. Energy Corp.*,
　534 F.3d 547 (7th Cir. 2008) ................................................................................................. 6

*Peterson v. Lindner*,
　765 F.2d 698 (7th Cir. 1985) ............................................................................................... 11

*Remijas v. Neiman Marcus Group, LLC*,
　794 F.3d 688 (7th Cir. 2015) ................................................................................................. 3

*Sentry Ins. v. Novelty, Inc.*,
　No. 09-c-355-slc, 2009 WL 5087688 (W.D. Wis. Dec. 17, 2009) ...................................... 11

*Sierra Club v. Franklin County Power of Illinois, LLC*,
　546 F.3d 918 (7th Cir. 2008) ................................................................................................. 3

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016) .................................................................................................. 3, 4, 6

*Steel Co. v. Citizens for a Better Environment*,
　523 U.S. 83 (1998) ................................................................................................................ 3

*Sunds Defibrator AB v. Beloit Corp.*,
　930 F.2d 564 (7th Cir. 1991) ................................................................................................. 3

*Warth v. Seldin*,
　422 U.S. 490 (1975) .............................................................................................................. 3

*Zean v. Fairview Health Servs.*,
   858 F.3d 520 (8th Cir. 2017) ...................................................................................................3

**Statutes**

28 U.S.C. § 2201 ...........................................................................................................................11

42 U.S.C. § 9613 .............................................................................................................................5

Comprehensive Environmental Response, Compensation and Liability Act § 113 ........................5

**Other Authorities**

40 C.F.R. Part 300 ...........................................................................................................................5

40 C.F.R. § 300.430(e) ....................................................................................................................5

40 C.F.R. § 300.430(f) ....................................................................................................................5

40 C.F.R. § 300.430(f)(1)(i)(B) .......................................................................................................5

40 C.F.R. § 430(f)(ii)(D) .................................................................................................................5

FARNSWORTH ON CONTRACTS §12.17a (3d. Ed.) .............................................................................2

Federal Rule of Civil Procedure 12(b)(1) .......................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 6, 9, 10

Federal Rule of Civil Procedure 57 ...............................................................................................11

Holmes, "The Path of the Law," 10 HARV. L. REV. 457 (1897) .....................................................2

Plaintiff Cliffs Mining Company ("Cliffs") respectfully submits this Memorandum in opposition to the motion to dismiss filed by Defendants Wisconsin Electric Power Company and Wisconsin Gas LLC ("collectively We Energies"). (Dkt. Nos. 14 and 16). For the reasons set forth below, Article III standing readily exists and the complaint states a claim upon which relief can be granted. (Dkt. No. 1). As such, the motion to dismiss, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, must be denied.

## INTRODUCTION

Despite We Energies' winded protestations of imminent calamity, this is a simple breach of contract case seeking damages, nothing more. We Energies, Cliffs, and others entered into a contract – the Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement ("JPDA") – to govern how they collectively would satisfy a mutual obligation to the U.S. EPA ("EPA") to conduct an investigation of a historically contaminated property located in Milwaukee. (The JPDA is confidential and was submitted to the Court under Seal. (Dkt. No. 15)). EPA and the parties then entered into a separate Administrative Settlement Agreement and Order on Consent ("ASAOC or "AOC") with the EPA in 2007 to perform the investigation contemplated by the JPDA, referred to as the Remedial Investigation/Feasibility Study ("RI/FS").

When the performing parties were halfway through the RI/FS investigation, pursuant to their ASAOC, We Energies unilaterally went to EPA and entered into a separate agreement (in the form of a separate AOC) with EPA to perform an Engineering Evaluation/Cost Analysis ("EE/CA"). We Energies' agreement with EPA to perform the EE/CA adversely impacted, if not

outwardly defeated and thwarted, the ability of Cliffs and the other parties to the JPDA to complete the RI/FS.[1]

## I. Neither Execution of the JPDA or Suing for Breach of Contract Violates Public Policy

In a factual vacuum, We Energies asserts that this case is "extraordinary," "contrary to public policy," and an "attempt to interfere" with We Energies' performance of the EE/CA. Nowhere in Cliffs' complaint does Cliffs seek to invalidate We Energies' agreement with EPA under the EE/CA or to interfere with the EE/CA work. Contract law is based on the ability, *even the right*, of one party (We Energies) to breach whenever it believes that its best interests are served thereby, *provided* the breaching party is willing to compensate the other side (Cliffs) through contract damages. This bedrock principle was expressed by Oliver Wendell Holmes over 100 years ago: "[t]he duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—and nothing else." Holmes, "The Path of the Law," 10 HARV. L. REV. 457, 462 (1897) (quoted in FARNSWORTH ON CONTRACTS §12.17a (3d. Ed.)). We Energies remains unconstrained to perform the EE/CA, and Cliffs is entitled to be compensated for its damages due to We Energies' breach.

## II. Article III Standing Exists

Article III standing is satisfied whenever the complainant has "such a personal stake in the outcome of the controversy as to assure ... concrete adverseness." *Baker v. Carr*, 369 U.S. 186, 204 (1962). To establish such a "personal stake," a litigant must allege that (1) it has suffered, or is threatened with, an "injury in fact" to a judicially cognizable interest; (2) the injury is fairly traceable to the challenged action; and (3) a favorable decision will redress that

---

[1] While extraneous documents are not properly considered in ruling on a motion to dismiss, We Energies filed a copy of the EE/CA (Dkt. No. 16-3) and a letter from EPA dated March 29, 2018 (Dkt. No. 16-4), the latter of which confirms the allegations of the complaint. EPA's letter states that it is holding work required by the RI/FS, the "2007 AOC", "in abeyance . . . while We Energies performs work under the 2017 AOC [the EE/CA]."

injury. *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Succinctly put, the touchstone of the inquiry is whether the party seeking relief "personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 n.5 (1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). If so, the party has standing.

The "injury-in-fact" requirement is anything but onerous. All a litigant must show is an "identifiable trifle" of injury. *See, e.g., Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918, 925 (7th Cir. 2008). A litigant need not even currently suffer any injury; it suffices that it is "threatened" with such injury. *Id.* at 926. Moreover, "[a]llegations of future harm can establish Article III standing if that harm is 'certainly impending.'" *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015).

In addressing constitutional standing, it is crucial "not to conflate Article III's requirement of injury in fact with [the merits of] a plaintiff's potential causes of action." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016); *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring). Financial injury or injury to one's contract rights – the types of injury the Cliffs is asserting here – are among the most straightforward and compelling for purposes of standing. *See Sunds Defibrator AB v. Beloit Corp.*, 930 F.2d 564, 565-66 (7th Cir. 1991) (dismissing as "preposterous" the notion that a party alleging a breach of contract did not have standing).

The court is to evaluate the facial attack on jurisdiction based on the face of the complaint and on other materials necessarily embraced by the pleadings, such as relevant contract documents. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526-27 (8th Cir. 2017). Of course, the Court is required to accept all fact allegations as true, and make all reasonable inferences in favor of Cliffs. *Carlsen*, 833 F.3d at 908.

3

Cliffs easily satisfies constitutional standing. It claims to be a party to a breached contract thus constituting "an invasion of a legally protected interest," and that it suffered monetary damages because it did not get the benefit of its bargain, thereby alleging injury in fact "that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.,* 136 S. Ct. at 1548 (quotations omitted); *see also Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 408-409 (2013).

Cliffs' injury easily is fairly traceable to the alleged breach of contract. Cliffs alleges that it bargained for the opportunity to perform the RI/FS jointly with We Energies and other parties, that We Energies breached the contract when it impaired or defeated the ability to perform the RI/FS, and that Cliffs suffered actual injury consisting of the diminished value of its bargain. As such, Cliffs has indeed alleged a concrete and particularized breach of contract and "actual" injury. *Kuhns v. Scottrade, Inc.* 868 F.3d 711, 716 (8th Cir. 2017) (holding that "a party to a breach of contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach occurred" and that party to contract sufficiently alleged actual injury based on allegations that he did not receive the full benefit of his bargain).

Cliffs' injuries are neither hypothetical or speculative. We Energies completely ignores the specific allegations of the complaint that Cliffs has *already* suffered damages by virtue of having paid money towards an RI/FS that is no longer being considered by EPA. (Dkt. No. 1, ¶24) (by virtue of the breach, Cliffs is no longer able to fulfill the requirements of the RI/FS, thus wasting a substantial portion of the financial contributions Cliffs made); *see also, id.* ¶29 (breach by We Energies stranded a substantial portion of funds Cliffs used to perform RI/FS). Cliffs' already has expended approximately $2,000,000 in funding its share of the RI/FS, expenditures which Cliffs now alleges have been wasted.

In alleging that Cliffs cannot show "certainly impending" harm, We Energies appears to confuse the potential for *any* harm to occur with the extent of the future harm that will follow harm that has already occurred. Even as to future harm, however, threatened injury that is impending, as it is here, is sufficient for standing. *Clapper*, 568 U.S. at 409 (". . . imminence is concededly a somewhat elastic concept."). Cliffs – particularly at the pleading stage – does not need to show that it is "literally certain" that it will suffer a specific level of harm. *Id*. at 414, n. 5.

We Energies further argues that it is speculative as to whether it would ever sue Cliffs in contribution under Section 113 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9613. Yet, We Energies misses the point. Cliffs' complaint alleges that, by virtue of the EE/CA agreement with EPA, We Energies is now *protected* against the CERCLA contribution claims *that Cliffs could assert against We Energies*. Cliffs alleged that *its* contribution rights are now completely foreclosed, which is actual injury. We Energies' EE/CA ASAOC also states this explicitly. (Dkt. No. 16-3, §94).

We Energies mistakenly asserts that because We Energies' work pursuant to the EE/CA must be "cost-effective" under CERCLA, that Cliffs could *never* overpay. This is simply incorrect. Under CERCLA and the National Contingency Plan ("NCP"), 40 C.F. R. Part 300, work must be cost effective, but cost-effective does not mean least cost. EPA must implement a remedy after weighing a variety of factors under the NCP, such as long and short term effectiveness, then balance its approach in light of the costs. 40 C.F.R. Sections 300.430(e) and (f). More than one remedy could be cost effective. 40 C.F.R. 430(f)(ii)(D) ("Cost-effectiveness is determined by evaluating the following three of the five balancing criteria noted in § 300.430(f)(1)(i)(B) to determine overall effectiveness: long-term effectiveness and permanence, reduction of toxicity, mobility, or volume through treatment, and short-term effectiveness.

5

48169461v.4
Case 2:18-cv-00581-WED    Filed 08/28/18    Page 9 of 18    Document 20

Overall effectiveness is then compared to cost to ensure that the remedy is cost-effective.). Cost effective means no more than "[a] remedy shall be cost-effective if its costs are proportional to its overall effectiveness." *Id*.

Cliffs alleges that had the RI/FS proceeded without We Energies usurping the process for determining the appropriate remedy, Cliffs and the other parties to the JPDA would have obtained from EPA a remedy that is different, and cheaper, than the one that We Energies will obtain under the EE/CA. Once We Energies became the owner of the property, it usurped the ability of the Members under the JPDA to shape the remedy selection process. We Energies is now advocating a capital intensive remedial approach so as to remediate the Site in a more expensive manner that promotes the property's redevelopment *from which We Energies alone will profit.*

Finally, Cliffs' injury will be redressed by a favorable decision, as required for Article III standing, by payment of monetary damages and a declaration as to Cliffs' rights under the JDPA, as required by *Spokeo*.

In sum, Cliffs alleges an injury in fact, fairly traceable to the challenged action, that will be redressed by a favorable decision. Constitutional standing under Article III is present here.

### III. Cliffs has Adequately Pled a Claim for Breach of Contract Upon Which Relief may be Founded.

Under Wisconsin law, a claim for breach of contract exists if plaintiff alleges each of three elements: 1) the existence of a valid contract; 2) a breach by defendant of that contract; and 3) that damages flowed from that breach. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008). Cliffs alleges each of these elements in its Complaint. Cliffs does not make bald allegations nor does it rely on legal conclusions. Instead, the bases for its claims are sufficiently detailed. Cliffs' complaint easily alleges a "plausible" claim for relief and therefore the Rule 12(b)(6) motion to dismiss by We Energies must be denied.

As to the first element, Cliffs' complaint alleges in Paragraph 27 that the JPDA is a valid and binding contract, and in Paragraph 9 alleges the formation of a valid contract. (Dkt. No. 1, ¶¶9, 27). Cliffs also alleges the purpose of the JPDA, "to establish a joint defense, respond to EPA claims, conduct the RI/FS, investigate and identify persons responsible for adverse environmental conditions as the Site, allocate amongst themselves common technical and administrative costs incurred in connection with the negotiation and performance of the RI/FS and provide for the sharing of confidential information between the Members." *Id*. The Complaint further alleges that "under Section 1(a) of the [JPDA], the Members agreed to "[o]rganize and conduct a common response to claims asserted by the [EPA]"; "[u]nder Section 4(a) of the Agreement, the parties accepted as shared costs the costs of performing the RI/FS ASAOC"; and, "[u]nder Section 6(b), a Member to the Agreement is not permitted to withdraw (absent a special vote, which as to We Energies, has not occurred here)."

As to the second element, Cliffs' complaint alleges We Energies' breach of the JPDA. In particular, Paragraphs 13 and 18 of the Complaint allege that "We Energies decision to independently pursue an EE/CA . . . breaches the [JPDA]", explaining that the EE/CA remedy will be more expensive that what would have resulted from the RI/FS has the parties completed it pursuant to the JPDA. In Paragraph 18, Cliffs alleges that it "it is no longer possible to fulfill the requirements of the RI/FS ASAOC by virtue of We Energies' breach."

In Paragraph 17 of the Complaint, Cliffs alleges a specific breach of Paragraph 3(c) of the Agreement under which the Members agreed to conduct votes or special votes among the Members if certain decisions "otherwise create[d] obligations not related to the performance of the RI/FS that could impose financial or significant other responsibilities" on the Members.

Cliffs' complaint alleges, among other allegations, that "We Energies breached the [JPDA] by failing to jointly perform the RI/FS as required by the [JPDA]" and that We Energies

7

"breached the [JPDA], including Section 1(a), by foreclosing the ability of the parties to the Agreement to undertake and complete the RI/FS, by thwarting Cliffs' ability to fulfill the requirements of the RI/FS ASAOC, and, by stranding a substantial portion of Cliffs' share of funding towards the RI/FS." (Dkt. No. 1, ¶¶ 24, 29). In Paragraph 28 of the Complaint, Cliffs alleges that "We Energies has breached the Agreement, and the covenant of good faith and fair dealing which is implied in every contract under Wisconsin law."

Lastly, as to the third element, the Complaint alleges damages arising from the breach. The damages alleged include: that "it is no longer possible to fulfill the requirements of the RI/FS ASAOC" (Dkt. No. 1, ¶1); that the EE/CA process will result in a more expensive remedy causing damage to Cliffs (Dkt. No. 1, ¶¶13, 15, 19); that Cliffs can no longer fulfill the requirements of its agreement with EPA under the RI/FS ASAOC (Dkt. No. 1, ¶18); that Cliffs CERCLA contribution rights have been cut-off (Dkt. No. 1, ¶16); and that the costs Cliffs has expended in performing the RI/FS "have been wasted." (Dkt. No. 1, ¶20).

We Energies argues that the JPDA does not foreclose it from entering into a second agreement with EPA, but that is a non sequitur. As noted, We Energies always enjoys freedom of to do as it pleases despite a binding contract; however it must pay damages to Cliffs as a consequence of breaching the JPDA.

We Energies entered into the JPDA requiring that the parties mutually perform the RI/FS and obtain the benefits of that performance. When We Energies abandoned its contract partners in favor of an opportunity only available to itself, it breached its duty of good faith and fair dealing. As stated by the Court in *Betco Corp., Ltd. v. Peacock*, No. 14-CV-193-WMC, 2016 WL 7429460, at *6 (W.D. Wis. Dec. 23, 2016), "[t]he first step in evaluating whether there has been a breach of the duty of good faith and fair dealing is to determine the reasonable contractual expectations of the parties, including the primary purpose of the agreement." Here, the JPDA has

8

48169461v.4
Case 2:18-cv-00581-WED   Filed 08/28/18   Page 12 of 18   Document 20

as its *common* purpose: among others to "respond to EPA claims, [and] conduct the RI/FS…" Given that purpose, the "plausible" standard needed to survive a Rule 12(b)(6) motion is met easily. It is indeed "plausible" that We Energies ". . . has acted, or failed to act, in a way that has resulted in [Cliffs] being 'actually denied the benefit of the bargain originally intended by the parties.'" *Betco Corp., Ltd., 2016 WL 7429460, at \*6.*

We Energies also breached Section 1(a) of the JPDA, which obligates We Energies, as part of a "cooperating group of parties," to "[o]rganize and conduct a *common response* to claims asserted by U.S. EPA in the March 30, 2006 [Special Notice Letter]." (Emphasis added).

Further We Energies specifically breached Section 3(c) of the JPDA. We Energies misleads the Court in its supporting memorandum at page 12 by misquoting the JPDA, starting with one sentence but then using ellipses to continue quoting from the second sentence. Section 3(c) reads:

> **c**. **Decisions by Vote or Special Vote**. Decisions by the Group will be carried by the majority of the votes of the Members voting for a proposition, except in the case where a Special Vote is required. A Special Vote will be required: . . . (12) to otherwise create obligations not related to the performance of the RI/FS that could impose financial or significant other responsibilities upon the Group.

We Energies suggests that the entirety of Section 3(c) pertains only to Group decision-making, yet the language stating "Decisions by the Group…" is contained only in the first sentence of Section 3(c). First, the first sentence contains an exception for a "Special Vote," indicating that a "Special Vote" is not contemplated within the language of the first sentence. Next, the operative second sentence, as alleged in the complaint, says nothing about a Group decision but instead directly defines the requirements for a "Special Vote": "*A Special Vote will be required*: . . . (12) to otherwise create obligations not related to the performance of the RI/FS

9

48169461v.4
Case 2:18-cv-00581-WED   Filed 08/28/18   Page 13 of 18   Document 20

that could impose financial or significant other responsibilities upon the Group." (Emphasis added). The second sentence is disjunctive from the first.

Even if the entirety of Section 3(c) speaks to Group decision-making, We Energies is still in obvious breach of that provision. Its unilateral action to abandon the "common response to claims asserted by U.S. EPA," *foreclosed* the ability of the Group as a whole to decide whether to "otherwise create obligations not related to the performance of the RI/FS that could impose financial or significant other responsibilities upon the Group." Depriving the Group from the ability to collectively decide whether to create an obligation imposing "financial or significant other responsibilities upon the Group," is itself a unilateral rather than Group decision and thus a breach of the JPDA.

We Energies makes other fatuous arguments that hardly merit a response. It claims for example that the JPDA does not require the completion of an RI/FS, but merely that the Members share the costs of the RI/FS. The Members entered into a binding agreement with EPA to actually perform the RI/FS, an obligation that the Members must jointly fund and from which they cannot withdraw. By virtue of entering into an obligation with EPA to perform the RI/FS, the JPDA obligates the Members to perform it. As another example of We Energies making unfounded and unsupported assertions, it claims that the RI/FS can continue alongside the EE/CA work. While such an assertion is beyond that to be considered on a Rule 12(b)(6) motion, the extraneous documentation We Energies has placed before the Court, (Dkt. No. 16-4), flatly contradicts this assertion. In that document, EPA is explicit that "EPA will hold in abeyance work under the [RI/FS] while We Energies performs the [EE/CA] work." They are not, and cannot, be performed side by side.

10
48169461v.4
Case 2:18-cv-00581-WED   Filed 08/28/18   Page 14 of 18   Document 20

## IV. Cliffs Has Properly Alleged a Claim for Declaratory Judgment

The Declaratory Judgment Act ("Act") provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Seventh Circuit has routinely affirmed a party's right under the Act to pursue declaratory relief in addition or as an alternative to other remedies. *E.g. Peterson v. Lindner,* 765 F.2d 698, 703 (7th Cir. 1985) ("The provision that rights can be declared 'whether or not further relief is or could be sought' means that a party may seek and be granted a declaratory judgment regardless whether for various reasons it chooses not to pursue a coercive remedy, or does pursue coercive relief, either as an alternative to, or in addition to, the declaration of rights.").

Likewise, in giving effect to the Act, Federal Rule of Civil Procedure 57, provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." The Advisory Committee Notes to Rule 57 reiterate the Act's intent to make declaratory relief an "alternative or cumulative and not exclusive or extraordinary" remedy. R. 57, Adv. Comm. Notes. ("When declaratory relief will not be effective in settling the controversy, the court may decline to grant it. But the fact that another remedy would be equally effective affords no ground for declining declaratory relief.").

Federal courts in Wisconsin have addressed and rejected We Energies argument here. In *Sentry Ins. v. Novelty, Inc.*, No. 09-c-355-slc, 2009 WL 5087688, at *3-4 (W.D. Wis. Dec. 17, 2009), plaintiff argued that the court should decline jurisdiction over defendant's claim for declaratory relief because defendant's interests would be resolved fully by adjudication of plaintiff's breach of contract claim. The court rejected plaintiff's argument, holding instead that both the breach of contract and declaratory judgment claims could go forward because "[a] justiciable controversy exists regarding the obligations and rights of the parties under the

11

48169461v.4

Case 2:18-cv-00581-WED   Filed 08/28/18   Page 15 of 18   Document 20

[agreement]" and a court "may declare the rights … of any interested party" under the Act "whether or not further relief is or could be sought." *Id*.

Cliffs' claim for declaratory relief meets all requirements of the Act. The dispute between the parties regarding the obligations and rights of each under the Agreement clearly creates a justiciable controversy. A declaration of the parties' rights and obligations will serve to narrow the issues in dispute. The declaratory relief sought is complementary to Cliffs' other claim for relief and the fact that Cliffs has chosen to pursue other relief, by way of its breach of contract claim, "does not preclude a declaratory judgment that is otherwise appropriate." Cliffs properly asserts a claim for declaratory relief.

## V. Conclusion

For all the reasons discussed above, We Energies motion must be denied.

DATED: August 28, 2018                    Respectfully submitted,

                                             SEYFARTH SHAW LLP

                                             By: */s/ Louis S. Chronowski*
                                                  Louis S. Chronowski

                                             Attorneys for
                                             Plaintiff Cliffs Mining Company

Andrew H. Perellis
aperellis@seyfarth.com
Louis S. Chronowski
lchronowski@seyfarth.com
Patrick D. Joyce
pjoyce@seyfarth.com
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

13
48169461v.4
Case 2:18-cv-00581-WED   Filed 08/28/18   Page 17 of 18   Document 20

## CERTIFICATE OF SERVICE

      The undersigned attorney certifies that a copy of this document was served on all counsel of record via the Court's ECF system on this 28th day of August, 2018.

                                        */s/ Louis S. Chronowski*
                                        Louis S. Chronowski