# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CLIFFS MINING COMPANY,**

        **Plaintiff,**

     **v.**                                    **Case No. 18-CV-581**

**WISCONSIN ELECTRIC POWER COMPANY
and WISCONSIN GAS LLC,**

        **Defendants.**

## ORDER

### INTRODUCTION

Plaintiff Cliffs Mining Company filed this action against defendants Wisconsin Electric Power Company and Wisconsin Gas LLC (collectively, "We Energies") seeking a declaratory judgment and alleging breach of contract. (ECF No. 1.) We Energies moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 16.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 9,11.) We Energies' motion is ready for resolution.

### FACTS

The following facts are taken from the complaint. In 2006, Cliffs, We Energies, and three other companies (collectively, the "Group") received a Special Notice Letter from

the United States Environmental Protection Agency ("EPA") regarding environmental concerns at the former Milwaukee Solvay Coke & Gas Site located at 311 East Greenfield Avenue, Milwaukee, Wisconsin. (ECF No. 1, ¶ 8.) The companies were considered potentially responsible parties under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). (*Id.*)

In response to the EPA's letter, the Group entered into a joint participation and defense agreement titled, "Former Milwaukee Solvay Coke & Gas Site Confidential Joint Participation and Defense Agreement – RI/FS." (ECF No. 1, ¶ 9.) The purpose of that agreement was "to establish a joint defense, respond to EPA claims, conduct the [Remedial Investigation/Feasibility Study], investigate and identify persons responsible for adverse environmental conditions at the Site, allocate amongst themselves common technical and administrative costs incurred in connection with the negotiation and performance of the [Remedial Investigation/Feasibility Study] and provide for the sharing of confidential information between the Members." (*Id.*)

Shortly after executing the Joint Participation and Defense Agreement, the Group and the EPA entered into an "Administrative Settlement and Order on Consent for Remedial Investigation/Feasibility Study" ("2007 ASAOC"), which required the completion of a Remedial Investigation and Feasibility Study for the Site. (ECF No. 1, ¶ 10.) The Remedial Investigation and Feasibility Study determines the nature and extent of contamination at the Site and proposes remedial options to the EPA. (*Id.; see* 40 C.F.R.

Part 300, Subpart E.) Once the Remedial Investigation and Feasibility Study is complete, the EPA selects a specific remedy for the Site by issuing a Record of Decision. (*Id.*) Once the remedy is selected, the Group may either enter into an additional Administration Settlement Agreement and Order on Consent to undertake the chosen remedy or enter into a Consent Decree in a court action for that purpose. (*Id.*)

While the Remedial Investigation and Feasibility Study was being conducted, We Energies purchased the Site after the Site's owner went into bankruptcy. (ECF No. 1, ¶¶ 11-12.) We Energies then entered into a separate agreement with the EPA titled, "Administrative Settlement and Order on Consent for Site Fencing/Security, Engineering Evaluation/Cost Analysis and Non-Time Critical Removal Action at the Uplands" ("2017 ASAOC"). (*Id.*, ¶ 12.) The 2017 ASAOC between We Energies and the EPA creates an independent obligation for We Energies to remediate the Site. (*Id.*)

The Remedial Investigation for the Site is complete, and the Group has submitted portions of the Feasibility Study to the EPA. (ECF No. 1, ¶ 11.)

Cliffs alleges that the remedy contemplated by the 2017 ASAOC "employs a remediation approach that is imprudent and is in excess of more cost effective and reasonable remedial options available under CERCLA." (ECF No. 1, ¶ 13.) Cliffs alleges that We Energies is motivated by its desire to quickly redevelop the Site and that it is acting in its self-interests to the detriment of the Group. (*Id.*) Cliffs further alleges that We

3

Energies' separate arrangement with the EPA constitutes a breach of the Joint Participation and Defense Agreement. (*Id.*, ¶¶ 13, 17, 28-30.)

As a result of that breach, Cliffs alleges it has been and will be further damaged. Specifically, Cliffs alleges that (1) it "has been damaged … in that it is no longer possible to fulfill the requirements of the [2007] ASAOC," (ECF No. 1, ¶ 18); (2) it "will be further damaged … given that the [Engineering Evaluation/Cost Analysis] prevents completion of the [Remedial Investigation/Feasibility Study], such that a substantial portion of costs incurred by Cliffs in fulfilling the [Remedial Investigation/Feasibility Study] have been wasted," (*id.*, ¶ 20); (3) it "will be further damaged by the breach to the extent that Cliffs' share of the costs of the remedy for the Site resulting from the [Engineering Evaluation/Cost Analysis] exceed that [sic] would have resulted from its share of the remedy for the Site resulting from the [Remedial Investigation/Feasibility Study]," (*id.*, ¶ 19); and (4) "[u]nder the [2017] ASAOC, once WE Energies performs … [i]t can sue Cliffs in contribution under CERCLA, but Cliffs would be barred from seeking contribution from WE Energies, thereby exposing Cliffs to the risk of paying a higher and disproportionate share of the remedy costs," (*id.*, ¶ 16).

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject-matter jurisdiction. For purposes of a motion to dismiss under Rule 12(b)(1), the district court must accept all well-pleaded factual allegations as

4

true and draw all reasonable inferences in the plaintiff's favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017); *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). However, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (internal quotation and citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. As with a motion to dismiss under Rule 12(b)(1), the court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

**ANALYSIS**

**I.  Breach of Contract**

**A.  Subject-Matter Jurisdiction**

In moving to dismiss under Rule 12(b)(1), We Energies contends that the court lacks subject matter jurisdiction because Cliffs lacks standing to bring this lawsuit at this time. Constitutional standing is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims. "The jurisdiction of federal courts is limited to 'Cases' and 'Controversies' as described in Article III, Section 2 of the Constitution of the United States. There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 576-77). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 (internal quotation marks omitted)). "Allegations of future harm can establish Article III standing if that harm is 'certainly impending,' but 'allegations of possible future injury are not sufficient.'" *Remijas v. Neiman Marcus Group*,

6

*LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1147 (2013) (citation omitted)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc.*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

We Energies argues that "[t]he anticipatory 'injury' Cliffs alleges—that its *potential* share of the as yet undetermined cost to remediate the former industrial site *may* increase as a result of We Energies' consent order with the Government—is entirely speculative and cannot constitute an injury-in-fact." (ECF No. 16 at 6.) (Emphasis in original.) We Energies also argues that, "[e]ven if Cliffs could show that it will be injured by an increase in its share of costs, or that Cliff's [sic] money was 'wasted' by abiding by the 2007 ASAOC, Cliffs cannot show that We Energies caused this injury as opposed to EPA." (*Id.* at 14.) It further argues that Cliffs is unable to show redressability because a decision in Cliffs' favor "would do nothing to impact the fact that EPA found the [Comparative Analysis of Alternatives Memorandum] proposals under the 2007 ASAOC significantly deficient, nor would it impact the selection or cost of the remedy ultimately chosen by EPA or Cliffs' share allocation in a future (currently non-existent) CERCLA action." (*Id.* at 15.)

In response, Cliffs argues that "it bargained for the opportunity to perform the Remedial Investigation/Feasibility Study jointly with We Energies and other parties[.]" (ECF No. 20 at 4.) We Energies breached the parties' contract "when it impaired or

7

defeated the ability to perform the [Remedial Investigation/Feasibility Study.]" (*Id*.) And, Cliffs alleges, it has already "suffered actual injury consisting of the diminished value of its bargain." (*Id*.) Specifically, it has already suffered damages "by virtue of having paid money towards the [Remedial Investigation/Feasibility Study] that is no longer being considered by EPA." (*Id*.) In addition, it contends that, by virtue of We Energies' separate agreement with the EPA, Cliffs has lost the ability to ever seek contribution from We Energies under CERCLA. (*Id*. at 5.)

In reply, We Energies argues that "Cliffs cannot claim that We Energies' alleged actions 'wasted' Cliffs' contributions toward the [Remedial Investigation/Feasibility Study] when the [Remedial Investigation/Feasibility Study] could still go forward." (ECF No. 21 at 6.) In support, We Energies relies on a March 29, 2018 letter from the EPA to the Group (ECF No. 16-4), which the court considers in determining whether it has subject-matter jurisdiction over Cliffs' complaint, *see Evers*, 536 F.3d at 656-57. The letter states that the EPA is in receipt of a draft Comparative Analysis of Alternatives Memorandum, dated September 2017, from the Group. (ECF No. 16-4 at 2.) It states that the EPA has identified "significant deficiencies in the draft document[]" but that the "EPA does not currently intend to return comments" to the Group based on its review of the memorandum. (*Id*.) Instead, it states that "for the upland portions of the Site subject to the 2007 AOC, EPA will hold in abeyance work under the 2007 AOC while We Energies performs work under the 2017 AOC." (*Id*.)

The March 2018 letter from the EPA does not necessarily contradict Cliffs' allegation that a substantial portion of costs it incurred in fulfilling the Remedial Investigation/Feasibility Study have been wasted. That is, it is plausible that, in holding work under the 2007 ASAOC in abeyance while We Energies performs the Engineering Evaluation/Cost Analysis under the 2017 ASAOC, the EPA will never ask the Group to complete its work under the Remedial Investigation/Feasibility Study.

Cliffs' complaint sufficiently alleges that (1) it has suffered an injury in fact (that a substantial portion of the costs it incurred in conducting the Remedial Investigation/Feasibility Study have been wasted), (2) traceable to We Energies' alleged breach of the Joint Participation and Defense Agreement, and (3) likely redressed by the payment of damages. Accordingly, this court has jurisdiction over Cliffs' breach of contract claim and We Energies' motion to dismiss under Rule 12(b)(1) will be denied.

**B.     Failure to State a Claim**

We Energies also moves to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. In ruling on We Energies' Rule 12(b)(6) motion, the court must preliminarily decide whether it can consider the four exhibits We Energies attached to its motion to dismiss. A motion to dismiss a complaint under Rule 12(b)(6) is based on the pleadings. *See* Fed. R. Civ. P. 12(d). Having said that, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim. Such documents may be considered by a district court in ruling

on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). We Energies' attached four exhibits to its motion to dismiss: the Joint Participation and Defense Agreement (ECF No. 16-1), the 2007 ASAOC (ECF No. 16-2), the 2017 ASAOC (ECF No. 16-3), and the March 29, 2018 letter from the EPA to the Group (ECF No. 16-4).

The Joint Participation and Defense Agreement is referred to in Cliffs' complaint (*see, e.g.,* ECF No. 1, ¶ 1) and is central to Cliffs' breach of contract claim. Cliffs' complaint also refers to the 2007 ASAOC and the 2017 ASAOC, as Cliffs alleges that the 2017 ASAOC between We Energies and the EPA undermines the 2007 ASAOC and breaches the Joint Participation and Defense Agreement. (*See* ECF No. 1, ¶¶ 13, 16, 18, 29, 30.) The letter from the EPA to the Group, however, is not mentioned in Cliffs' complaint. Although the court can consider the letter when deciding under Rule 12(b)(1) whether it has subject matter jurisdiction to proceed with this lawsuit, it is not proper to consider the letter when deciding under Rule 12(b)(6) whether Cliffs' complaint states a claim upon which relief can be granted. *See Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir. 1987). As such, in ruling on We Energies' Rule 12(b)(6) motion, the court will consider the Joint Participation and Defense Agreement, the 2007 ASAOC, and the 2017 ASAOC, but not the March 29, 2018 EPA letter.

Under Wisconsin law, to state a claim for breach of contract a plaintiff must allege: (1) the existence of a valid contract; (2) that the defendant breached that contract; and (3) that damages flowed from that breach. *Matthews v. Wisconsin Energy Corp. Inc.*, 534 F.3d

547, 553 (7th Cir. 2008). We Energies argues that "Cliffs has failed to plausibly allege any facts showing that We Energies breached any terms of the [Joint Participation and Defense Agreement] or that Cliffs has suffered any damages as a result." (ECF No. 16 at 11.)

Cliffs alleges in part that We Energies breached Section 1(a) of the Joint Participation and Defense Agreement, which provides in relevant part:

> **a. Purposes:** This Agreement sets forth the terms by which the Members have organized and constituted themselves as a cooperating group of parties and sets forth the terms and conditions governing the manner and means by which the Members will work to achieve the following purposes, as appropriate:
> 1.) Organize and conduct a common response to claims asserted by U.S. EPA in the March 30, 2006 [Special Notice Letter].
> 2.) Organize and conduct negotiations with U.S. EPA regarding the performance of a Remedial Investigation/Feasibility Study and conduct the RI/FS.

(ECF No. 15-2 at 3.) Cliffs argues that the 2017 ASAOC between We Energies and the EPA breaches Section 1(a) by failing "to '[o]rganize and conduct a *common response* to claims asserted by the U.S. EPA in the March 30, 2006 [Special Notice Letter]," (ECF No. 20 at 13 (alterations and emphasis in original)), and "by foreclosing the ability of the parties to the Agreement to undertake and complete the [Remedial Investigation/Feasibility Study]" (ECF No. 1, ¶ 29).

We Energies argues in reply that Section 1(b) of the Joint Participation and Defense Agreement "limits the scope of the [Agreement] to work relating to the [Remedial Investigation/Feasibility Study] and explicitly excludes 'any response action or remedial

action in addition to the [Remedial Investigation/Feasibility Study] work' from the Agreement's terms." (ECF No. 21 at 6.) Section 1(b) provides in relevant part:

> **b. Limitation on Scope of Work.** The scope of work covered by this Agreement, and the authorized funding of shared Costs under this Agreement … does not include the performance of any response action or remedial action in addition to the RI/FS work, including but not limited to any work designated in a final Record of Decision (ROD) issued for all or any portion of the Site (the "Excluded Work").

(ECF No. 15-2 at 3.) We Energies argues that Section 1(b) makes it clear "that the [2017 ASAOC], which is a separate remedial action and proceeding from the [Remedial Investigation/Feasibility Study]," as well as "the decision as to what remedy is ultimately selected for the Site," fall outside the scope of the Joint Participation and Defense Agreement. (ECF No. 21 at 9.)

Although the 2017 ASAOC falls outside the scope of the Joint Participation and Defense Agreement, it does not follow that We Energies' could not breach the terms of Agreement by entering into the 2017 ASAOC with the EPA. Cliffs alleges that We Energies breached its duty under the Joint Participation and Defense Agreement to "conduct a common response" and to "conduct the [Remedial Investigation/Feasibility Study]" by entering into the 2017 ASAOC because the 2017 ASAOC thwarts (at least in part) the completion of the Remedial Investigation/Feasibility Study under the 2007 ASAOC. As such, Cliffs has sufficiently alleged that We Energies' breached the Joint Participation and Defense Agreement.

Cliffs must also allege that damages flowed from We Energies' breach of the Agreement. As discussed above, Cliffs has alleged that, as a result of We Energies' alleged breach, a substantial portion of the costs incurred by Cliffs in conducting the Remedial Investigation/Feasibility Study have been wasted.

Accordingly, Cliffs has sufficiently alleged a breach of contract by We Energies and We Energies' motion to dismiss under Rule 12(b)(6) will be denied.

**II. Declaratory Judgment**

We Energies argues that Cliffs' declaratory judgment claim should be dismissed because it is duplicative of its breach of contract claim. (ECF No. 16 at 20.) In response, Cliffs argues that "[t]he declaratory relief sought is complementary to [its] other claim for relief and the fact that [it] has chosen to pursue other relief, by way of its breach of contract claim, 'does not preclude a declaratory judgment that is otherwise appropriate.'" (ECF No. 20 at 16.)

The Declaratory Judgment Act provides that: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco. Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987) (citations omitted).

Several courts have exercised their discretion to refuse to entertain a declaratory judgment claim where its only purpose is to resolve an already-existing breach of contract claim. *See, e.g., Sprint Commc'ns Co., L.P., v. FairPoint Commc'ns, Inc.*, No. 3:16-CV-00820-GCM, 2017 WL 2919015, at *6 (W.D.N.C. July 7, 2017) ("Many courts have previously recognized that a declaratory judgment does not serve a useful purpose where that purpose is only to resolve an already-existing breach of contract claim."); *Hess v. Biomet, Inc.*, No. 3:16-CV-208, 2017 WL 661511, at * (N.D. Ind. February 16, 2017) ("Because [the declaratory judgment claim] does not state a viable claim for relief not already raised in [the breach of contract claim], the Court in an exercise of its discretion DISMISSES [the declaratory judgment claim]."); *Cohn v. Guaranteed Rate, Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) ("In this district, courts commonly exercise [the discretion to decline to hear a declaratory judgment action] where the claims for declaratory judgment substantially overlaps with Plaintiff's substantive claims.").

Cliffs seeks essentially the same relief in its declaratory judgment and breach of contract claims. In Count One, Cliffs seeks a declaration that: (1) We Energies *breached the Joint Participation and Defense Agreement* "by failing to call a vote or special vote regarding We Energies' decision to purchase the Site and pursue a remediation process that is vastly more costly than under the [Remedial Investigation/Feasibility Study]," (ECF No. 1, ¶ 23); (2) We Energies *breached the Joint Participation and Defense Agreement* "by failing to jointly perform the [Remedial Investigation/Feasibility Study"* as required by the agreement,

and that, as a result of the breach, Cliffs has been damaged because it "is no longer possible to fulfill the requirements of the [2007 ASAOC]," (*Id.*, ¶ 24); and (3) Cliffs will be further damaged by *the breach of the Joint Participation and Defense Agreement* "to the extent that Cliffs share of the costs of the remedy for the Site resulting from the [Engineering Evaluation/Cost Analysis] exceed that would have resulted from its share of the remedy for the Site resulting from the [Remedial Investigation/Feasibility Study]," (*Id.*, ¶ 25).

In Count Two, Cliffs alleges that: (1) We Energies *breached the Joint Participation and Defense Agreement* "by failing to call a vote or special vote under Section 3(c)," (ECF No. 1, ¶ 28); (2) We Energies *breached the Joint Participation and Defense Agreement* "by foreclosing the ability of the parties to the Agreement to undertake and complete the [Remedial Investigation/Feasibility Study], by thwarting Cliffs' ability to fulfill the requirements of the [2007 ASAOC], and, by stranding a substantial portion of Cliffs' share of funding towards the [Remedial Investigation/Feasibility Study]," (*Id.*, ¶ 29); and (3) We Energies *breached the Joint Participation and Defense Agreement* "by proposing under the [2017 ASAOC] a remediation approach that is imprudent and is in excess of more cost effective and reasonable remedial options available under CERCLA, and in doing Cliffs will be damaged to the extent that Cliffs' share of the costs of the remedy for the Site resulting from the [Engineering Evaluation/Cost Analysis] exceed that would have resulted from its share of the remedy for the Site resulting from the [Remedial Investigation/Feasibility Study]" (*Id.*, ¶ 30).

15

As such, the declaratory judgment claim is duplicative of the breach of contract claim and serves no useful purpose. The court will exercise its discretion and dismiss Count One of Cliffs' complaint.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss (ECF No. 16) is **granted** in part and **denied** in part. It is **granted** as to Count One (declaratory judgment) of the complaint and **denied** as to Count Two (breach of contract).

Dated at Milwaukee, Wisconsin this 27th day of November, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge